1

2

3

4

5

6                     UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   HALE BROS. INVESTMENT              No.  2:16-cv-02284-JAM-EFB
    COMPANY, LLC,
10
              Plaintiff,
11                                      **ORDER GRANTING IN PART AND**
         v.                             **DENYING IN PART DEFENDANTS'**
12                                      **MOTIONS TO DISMISS**
    STUDENTSFIRST INSTITUTE;
13  STUDENTSFIRST; and 50CAN,
    INC.,
14
              Defendants.
15

16      This action is centered around a landlord-tenant dispute

17  that is described in a Complaint which reads like an illicit love

18  affair:  Plaintiff Hale Bros. believing its relationship with

19  Defendant StudentsFirst foolproof allegedly discovers

20  StudentsFirst in bed with another.  Feeling betrayed, Hale Bros.

21  initiated this litigation, and in response StudentsFirst and

22  50CAN ask this Court to dismiss the Complaint and end this broken

23  association once and for all.  No other line is more apropos than

24  the Captain's from <u>Cool Hand Luke</u>:  "What we've got here is

25  failure to communicate."  <u>Id.</u> (Warner Bros. 1967).[1]

26  ───────────────────────
    [1] This motion was determined to be suitable for decision without
27  oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
    scheduled for December 13, 2016.  In deciding this motion, the
28  Court takes as true all well-pleaded facts in the complaint.

                                  1

1          I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2          StudentsFirst and StudentsFirst Institute ("StudentsFirst")

3    leased office space from Hale Bros. Investment Company, LLC

4    ("Plaintiff" or "Hale Bros."). First Am. Compl. ("FAC"), ECF No.

5    8, ¶ 8.  In October 2011, StudentsFirst agreed to pay monthly

6    rent to use the second floor of the Hale Building for sixty-seven

7    months.  See id.  See also Office Lease, attached to the FAC as

8    Exh. A (the "Lease").  StudentsFirst also leased twelve parking

9    spots connected to that building.  See FAC ¶ 9.  See also Parking

10   Agreement, attached to the FAC as Exh. B.  In March 2012,

11   StudentsFirst moved in and began paying rent seven months later.

12   See FAC ¶ 10.  The Lease was to remain in effect through October

13   2017.  FAC ¶ 28.

14        In the event StudentsFirst failed to perform its contractual

15   obligations, Plaintiff acquired a security interest.  The Lease

16   secured Plaintiff's interest in various furniture, fixtures, and

17   equipment from the office (the "Collateral").  See id. ¶ 15.  A

18   Letter of Credit also secured Plaintiff's interest for

19   $1,000,000.00, which reduced to $500,000.00 in March 2016.  See

20   id.

21        Three-and-a-half years passed before Plaintiff and

22   StudentsFirst's relationship soured.  It started with a meeting

23   in April 2016 (the "Meeting").  See id. ¶ 11.  StudentsFirst told

24   Plaintiff that, by September 2016, it would cease business

25   operations, transfer all assets to a third party, vacate the

26   office, and dissolve.  See id.  In other words, StudentsFirst

27   told Plaintiff that it would breach the Lease.  StudentsFirst

28   also gave Plaintiff a balance sheet that showed rent payments

1  stopping in July 2016 and capital contributions—valued at

2  $1,200,000.00—to 50CAN, Inc. ("50CAN") in April and June 2016.

3  See id. ¶¶ 12-13.  See also Cash Projections, attached to the FAC

4  as Exh. C.  StudentsFirst also concealed from Plaintiff their

5  intent to transfer their assets to 50CAN and merge their company

6  with 50CAN.  ¶ 16.  This merger took place in or around March

7  2016 at which time 50CAN assumed all obligations and liabilities

8  of StudentsFirst under the Lease.  ¶ 23.  For the next two

9  months, Plaintiff asked StudentsFirst to clarify its position,

10  but to no avail.  See FAC ¶ 14.  After paying rent for the last

11  time in June 2016, see id., StudentsFirst vacated and abandoned

12  this leased office space removing several assets prior to

13  departure.  See id. ¶ 15.

14      Plaintiff has sued StudentsFirst and 50CAN (collectively,

15  "Defendants") for breach of contract, fraudulent transfer, fraud,

16  civil conspiracy, common counts, and for violating California

17  Business & Professions Code § 17200.  Id. at 1.  Plaintiff also

18  requests declaratory relief.  Id.  Defendants move separately to

19  dismiss these claims.  ECF No. 9-1 ("50CAN's MTD"); ECF No. 10-1

20  ("SF's MTD").  Plaintiff opposes both motions to dismiss.  See

21  ECF No. 14 ("Opp'n to 50CAN's MTD"); ECF No. 15 ("Opp'n to SF's

22  MTD").

23                    II.   OPINION

24      A.   First Claim:  Breach of Contract

25      To state a claim for breach of contract under California

26  law, a plaintiff must allege (1) the existence of a contract;

27  (2) plaintiff's performance of its obligations under the

28  contract or an excuse for nonperformance; (3) defendant's

                              3

1   breach; and (4) resulting damage to plaintiff.   See Arch Ins.

2   Co. v. Sierra Equip. Rental, Inc., No. 2:12-cv-00617, 2016 WL

3   4000932, at *3 (E.D. Cal. July 25, 2016) (internal citation

4   omitted).

5            1.   StudentsFirst

6       StudentsFirst concedes that Plaintiff has properly pled a

7   breach of contract claim against it, so Plaintiff's claim

8   survives.   See SF's MTD at 2 ("What will remain is a

9   straightforward breach of contract dispute between Plaintiff and

10  StudentsFirst.").

11           2.   50CAN

12      Plaintiff premises its breach of contract claim on the

13  Lease, the Parking Agreement, and the implied covenant of good

14  faith and fair dealing.   FAC ¶¶ 32-40.   Specifically, Plaintiff

15  argues that StudentsFirst's failure to pay rent from July 2016

16  through the remaining lease term, failure to execute an Estoppel

17  Certificate, abandonment, and merger with 50CAN makes 50CAN

18  liable for breaching the Lease.   Id. ¶¶ 32-34.   Plaintiff also

19  asserts that StudentsFirst's failure to pay rent from July 2016

20  through the remaining lease term makes 50CAN liable for

21  breaching the Parking Agreement.   Id. ¶ 35.   And, finally,

22  Plaintiff claims that 50CAN breached the implied covenant of

23  good faith and fair dealing for several reasons, including when

24  StudentsFirst ceased business operations, merged with 50CAN,

25  concealed its intent to breach the Lease until after the Letter

26  of Credit decreased in value, vacated the premises, removed

27  Collateral, and stopped paying rent.   See id. ¶ 40 (emphasis

28  added).

4

1    Whether Plaintiff can bring this claim against 50CAN turns

2    on whether Plaintiff and 50CAN formed a contract.  50CAN

3    contends that they did not because, under the Lease, an

4    assignment occurs only if Plaintiff approves it.  See 50CAN's

5    MTD at 5; Reply, ECF No. 16, at 1-2 ("50CAN's Reply").  But

6    Plaintiff maintains that they formed a contract because 50CAN

7    assumed StudentsFirst's obligations and liabilities under the

8    Lease via the merger.  See Opp'n to 50CAN's MTD at 5.

9    The Court agrees with Plaintiff.  50CAN's argument

10   contradicts the Lease's plain language.  The Lease states that

11   an unapproved assignment constitutes a default—it says nothing

12   about termination.  Exh. A § 10.1(a) ("Without the prior written

13   consent of [Plaintiff]...[StudentsFirst] may not...assign...or

14   otherwise transfer...this Lease by operation of law or otherwise

15   or permit the use of...the Premises...by anyone other than

16   [StudentsFirst]").  The Lease also includes a successor-

17   liability rule:

18       Even if [StudentsFirst] is in Default and/or has
         abandoned the Premises, this Lease shall continue in
19       effect for so long as [Plaintiff] does not terminate
         [StudentFirst's] right to possession...and
20       [Plaintiff] may enforce all its rights and remedies
         under this Lease, including the right to recover Rent
21       as it becomes due under this Lease.  In such event,
         [Plaintiff] shall have all of the rights and remedies
22       of a landlord under California Civil Code Section
         1951.4 (lessor may continue Lease in effect after
23       Tenant's Default and abandonment and recover Rent as
         it becomes due, if Tenant has the right to sublet or
24       assign, subject only to reasonable limitations) or
         any successor statute.
25

26   Id. § 11.2(c).  In other words, a breach does not automatically

27   terminate the Lease.

28   Since StudentsFirst's alleged breach does not terminate the

5

1  Lease, 50CAN assumed StudentsFirst's obligations and liabilities

2  via the merger.  California law provides that the surviving

3  corporation inherits the absorbed corporation's liabilities.

4  See CAL. CORP. CODE § 1107(a)(West 2016).  See also Maudlin v. Pac.

5  Decision Sci. Corp., 137 Cal. App. 4th 1001, 1016 (2006).  By

6  including "California Civil Code Section 1951.4...or any

7  successor statute" in the Lease, Plaintiff and StudentsFirst

8  agreed that similar successor-liability rules applied.  Exh. A,

9  § 11.2(c)(emphasis added).  So, the Court "give[s] effect to the

10  mutual intention of the parties."  CAL. CIV. CODE § 1636 (West

11  2016).

12      In sum, Plaintiff has stated a claim against 50CAN under an

13  assumption theory.  Plaintiff alleges that the merger breached

14  the Lease and breached the implied covenant of good faith and

15  fair dealing.  See FAC ¶¶ 26-34, 36-43.  And Plaintiff maintains

16  that 50CAN "absorbed [StudentsFirst's] companies and assumed all

17  obligations and liabilities thereof, including, but not limited

18  to, [StudentsFirst's] obligations under the Lease."  Id. ¶ 29.

19  Because a default does not automatically terminate the Lease and

20  because the Lease mandates a successor-liability rule, Plaintiff

21  has sufficiently pled a breach of contract claim against 50CAN.

22  The Court denies 50CAN's motion to dismiss this claim.

23      B.   Second Claim:  Fraudulent Transfer

24      A fraudulent conveyance involves a debtor transferring

25  property to a third party with the intent to prevent a creditor

26  from reaching that interest to satisfy the creditor's claim.

27  See Filip v. Bucurenciu, 129 Cal. App. 4th 825, 829 (2005)

28  (internal citation and quotation marks omitted).  California's

6

1   Uniform Fraudulent Transfer Act ("UFTA") allows a defrauded

2   creditor to retrieve property the creditor would otherwise be

3   able to use to pay the debt.  See CAL. CIV. CODE § 3439.04 (West

4   2016).  See also Mehrtash v. Mehrtash, 93 Cal. App. 4th 75, 80

5   (2001).  Under the UFTA, a fraudulent transfer may be "actual"

6   or "constructive."  See CAL. CIV. CODE § 3439.04(a).  Hales Bros.

7   alleges an actual fraudulent transfer claim.  FAC ¶ 50.  To

8   state a claim under that theory, a plaintiff must plead that the

9   defendant made a transfer with "actual intent to hinder, delay,

10  or defraud any creditor of the debtor."  CAL. CIV. CODE

11  § 3439.01(i).

12      When pleading these elements, the plaintiff must meet the

13  heightened standards mandated by Fed. R. Civ. P. 9(b).  Opperman

14  v. Path, Inc., 87 F. Supp. 3d 1018, 1066 (N.D. Cal. 2014).  This

15  rule states that "[i]n alleging fraud or mistake, a party must

16  state with particularity the circumstances constituting the

17  fraud or mistake."  FED. R. CIV. P. 9(b).  In other words, the

18  plaintiff must state the "who, what, where, when, and how" and

19  must explain why the statement or omission was false or

20  misleading.  See Cooper v. Pickett, 137 F.3d 616, 625, 627 (9th

21  Cir. 1997)(internal citations omitted).  But these heightened

22  pleading requirements apply only to allegations made against the

23  transferor—not the transferee.  In re Beverly, 374 B.R. 221, 235

24  (B.A.P. 9th Cir. 2007) (noting that the focus is on the

25  transferor's intent).

26      The allegations supporting this claim apply to both

27  Defendants.  Plaintiff states that "[StudentsFirst] transferred

28  [its] assets to 50CAN with actual intent to hinder, delay,

1   and/or defraud Plaintiff in its collection of the monies

2   owed...."  FAC ¶ 50.  Then Plaintiff notes that "50CAN knowingly

3   and willingly received [StudentsFirst's] funds and assets with

4   knowledge that [StudentsFirst] actually intended to hinder,

5   delay and/or defraud Plaintiff by unlawfully preventing

6   Plaintiff from recovering such funds and/or assets," reasoning

7   that 50CAN had to know this, especially given the due diligence

8   preceding the merger.  Id. ¶ 51.

9        1.   StudentsFirst

10       StudentsFirst makes two arguments explaining why Plaintiff

11  has not stated a fraudulent transfer claim against it, but one

12  is not well taken.  StudentsFirst contends that Plaintiff's

13  constructive sham theory fails because Plaintiff did not allege

14  that StudentsFirst did not get a reasonably equivalent value.

15  SF's MTD at 9.  But Plaintiff has not raised a constructive sham

16  theory.  See FAC ¶¶ 50-51.  So, the Court focuses only on

17  whether Plaintiff has stated a claim under an "actual intent"

18  theory.

19       Because StudentsFirst is the transferor, Plaintiff must

20  plead its fraudulent transfer claim under Rule 9(b).  See

21  Opperman, 87 F. Supp. 3d at 1066.  Plaintiff alleges that

22  StudentsFirst transferred its assets to 50CAN with "actual

23  intent to hinder, delay, and/or defraud Plaintiff in its

24  collection of the monies owed due to [StudentsFirst's]

25  abandonment of the Premises, failure to pay Rents, and various

26  breaches of the Lease."  FAC ¶ 50.  Plaintiff adds that

27  StudentsFirst "unlawfully endeavored to place available funds

28  and assets outside Plaintiff's reach...."  Id. ¶ 52.

8

1    Plaintiff explains that "StudentsFirst" (the "who")

2  transferred its "assets"—including the $1,200,000.00 in capital

3  contributions to 50CAN in April and June 2016 (the "what" and

4  "when")—and "purposefully concealed [its] intent to abandon the

5  Premises and cease adhering to [its] obligations under the

6  Lease...until after the Letter of Credit was reduced...in an

7  effort to defraud Plaintiff, its creditor, and prevent Plaintiff

8  from adequately mitigating the damages caused by Defendants"

9  (the "how" and "why").   Id.  ¶¶ 50-52.

10    Plaintiff has specified the requisite "who, what, where,

11  when, and how," stating enough facts for StudentsFirst to

12  prepare an adequate answer.  See Cooper, 137 F.3d at 627

13  (holding that complaint satisfied Rule 9(b)'s particularity

14  requirement because, given that it "points to specific quarters,

15  specific customers and provided dollar figures for each

16  quarter," defendants could prepare an adequate answer).

17  Plaintiff also states that StudentsFirst put its "funds and

18  assets" beyond Plaintiff's reach, a crucial allegation.  See

19  Opperman, 87 F. Supp. 3d at 1066 (dismissing UFTA claim because

20  complaint did not mention that the transfer at issue put

21  property beyond plaintiffs' reach).

22    In sum, Plaintiff has satisfied Rule 9(b)'s particularity

23  requirement.  To require more would "make Rule 9(b) carry more

24  weight than it was meant to bear."  See Cooper, 137 F.3d at 627

25  (internal citation omitted).  If Plaintiff cannot later offer

26  sufficient evidence, then it "will not prevail [on this claim]

27  at summary judgment or trial," but courts "do not test the

28  evidence at this stage."  Id. (internal citation and quotation

1   marks omitted).  The Court denies StudentsFirst's request to

2   dismiss Plaintiff's fraudulent transfer claim.

3

4            2.   50CAN

5        50CAN makes the same arguments as StudentsFirst.  See

6   50CAN's MTD at 6; 50CAN's Reply at 2.  Because 50CAN is the

7   transferee, Plaintiff need not plead under Rule 9(b).  See

8   Beverly, 374 B.R. at 235.  Given that procedural distinction,

9   because Plaintiff has already stated a claim against

10  StudentsFirst under Rule 9(b), it necessarily follows that

11  Plaintiff has also stated a claim under the more relaxed Rule 8

12  plausibility standard.  Applying the same reasoning used to

13  conclude that Plaintiff stated a fraudulent transfer claim

14  against StudentsFirst, see supra Part II.B.1, the Court finds

15  that Plaintiff has stated one against 50CAN, and denies 50CAN's

16  request to dismiss it.

17       C.   Third Claim:  Fraud

18       To state a claim for fraud, a plaintiff must allege the

19  following under Rule 9(b)'s heightened pleading standard:  (1) a

20  misrepresentation (i.e., false representation, concealment, or

21  nondisclosure), (2) knowledge of falsity, (3) intent to defraud,

22  (4) justifiable reliance, and (5) resulting damage.  See Los

23  Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc., 233 Cal. App.

24  4th 803, 831 (2015)(internal citations and quotation marks

25  omitted).  A plaintiff may bring this claim under an affirmative

26  misrepresentation theory or a concealment theory.  Because Hale

27  Bros. brings its fraud claim under a concealment theory, see FAC

28  ¶¶ 54-61, the Court focuses only on whether Plaintiff has stated

1   a claim under that theory.

2       To successfully state a fraud claim under a concealment

3   theory, the plaintiff must show that the defendant had a legal

4   duty to disclose facts.  See Hoffman v. 162 N. Wolfe LLC, 228

5   Cal. App. 4th 1178, 1193 (2014).  A plaintiff makes that showing

6   by claiming either:  (1) the defendant had a fiduciary

7   relationship with the plaintiff; (2) the defendant exclusively

8   knew material facts not known to the plaintiff; (3) the

9   defendant concealed a material fact from plaintiff; or (4) the

10  defendant made partial representations, while also suppressing

11  some material facts.  See Insomniac, 233 Cal. App. 4th at 831

12  (internal citations and quotation marks omitted).  In short, an

13  affirmative duty to disclose concealed facts arises only from a

14  fiduciary or fiduciary-like relationship.  Id. at 832.

15      But, even if the plaintiff establishes an affirmative duty

16  to disclose, plaintiff must still overcome the economic loss

17  rule.  In California, a plaintiff cannot recover in tort for

18  breach of duties that merely restate contractual obligations.

19  See BNSF Ry. Co. v. San Joaquin Valley R.R. Co., No. 1:08-cv-

20  01086, 2011 WL 3328398, at *5 (E.D. Cal. Aug. 2, 2011)(internal

21  citations and quotation marks omitted).  In other words, when a

22  plaintiff links its fraud claim to a party's alleged failure to

23  comply with a contractual duty, the proper claim is breach of

24  contract—not fraud.  See id. (internal citation and quotation

25  marks omitted).  This rule prevents contract and tort law from

26  "dissolving" into each other, maintaining the crucial

27  "distinction between commercial transactions in which economic

28  expectations are protected by commercial and contract law, and

                                11

1  transactions with individual consumers who are injured in a

2  manner traditionally addressed through tort law." See id. at *6

3  (internal citation omitted).

4       But, as with most rules, there is one exception.

5  California courts allow tort damages in contract cases where

6  tort liability is either (1) completely independent of the

7  contract; (2) arises from intentional conduct intended to harm—

8  i.e., a breach of duty causing physical injury; (3) insurance

9  contract suits involving a breach of the covenant of good faith

10 and fair dealing; (4) wrongful discharge in violation of

11 fundamental public policy; or (5) fraudulent inducement. See

12 id. This exception, though, is "narrow in scope." See id. at

13 *9 (internal citation omitted).

14           1.   50CAN

15      Plaintiff does not bring a fraud claim against 50CAN. See

16 FAC at 12 ("Fraud against Defendants, StudentsFirst and

17 StudentsFirst Institute.").

18           2.   StudentsFirst

19      Plaintiff incorporates all preceding allegations into its

20 fraud claim, including breach of contract. See FAC ¶ 54.

21 Plaintiff specifies that "[StudentsFirst] intended to deceive

22 Plaintiff by failing to disclose and/or concealing from

23 Plaintiff [its] intention to merge [its] business with 50CAN,

24 transfer [its] assets to 50CAN, abandon the Premises, cease

25 payment of Rent and remove secured Collateral from the Premises

26 so as to induce Plaintiff not to draw upon the Letter of Credit

27 until after it was reduced...." Id. ¶ 56. Emphasizing that it

28 "had no way of knowing that [StudentsFirst]" had these

1    intentions, id. ¶ 57, Plaintiff maintains that it "reasonably

2    and justifiably relied on [StudentsFirst's] deceptions and/or

3    concealment because, at the time, [StudentsFirst was], and had

4    been, in compliance with the Lease." Id. ¶¶ 57, 59.

5        StudentsFirst argues that Plaintiff has not stated a fraud

6    claim against it because (1) Plaintiff failed to meet Rule

7    9(b)'s particularity standard, (2) StudentsFirst had no

8    affirmative duty to disclose facts to Plaintiff, and (3) even if

9    StudentsFirst did have that duty, Plaintiff still has not stated

10   a claim because Plaintiff cannot convert a contract-based

11   grievance into a tort. See SF's MTD at 5-8. Plaintiff

12   disagrees, contending that it has satisfied Rule 9(b) and that

13   StudentsFirst had a duty to disclose those facts because they

14   were material to Plaintiff. Opp'n to SF's MTD at 4. And

15   Plaintiff notes that whether StudentsFirst's omissions "also

16   constitute a breach of the Lease is incidental" to that duty.

17   Id.

18       The Court agrees with StudentsFirst, but only as to its

19   last contention. Beginning with StudentsFirst's pleading

20   argument, because Plaintiff incorporated all preceding

21   allegations into this claim (including fraudulent transfer), the

22   Court concludes that Plaintiff has met Rule 9(b)'s particularity

23   requirement, applying the same reasoning used to conclude that

24   Plaintiff satisfied Rule 9(b) for its fraudulent transfer claim.

25   See supra Part II.B.1.

26       As for whether StudentsFirst had an affirmative duty to

27   disclose facts, the Court concludes that it did. StudentsFirst

28   made partial representations to Plaintiff at the April Meeting,

13

1    but also made critical omissions.  StudentsFirst admitted its

2    intent to cease business operations, to transfer all assets to a

3    third party, to vacate the Premises, and to dissolve.  See FAC

4    ¶ 11.  But StudentsFirst said nothing about its intent to also

5    remove secured Collateral and to accomplish these things after

6    the Letter of Credit reduced in half.  See id. ¶¶ 11, 56-57

7    (emphasis added).  So, even though StudentsFirst and Plaintiff

8    did not have a fiduciary relationship, a duty to disclose still

9    arose because StudentsFirst revealed some facts at the April

10   Meeting, but omitted others, which produced misleading half-

11   truths.  That partial disclosure triggered an affirmative duty

12   to disclose.  See Warner Constr. Corp. v. City of Los Angeles, 2

13   Cal. 3d 285, at 294-94 (1970)(holding that affirmative duty

14   arose because "defendant [made] representations but [did] not

15   disclose facts which materially qualify the facts disclosed").

16       The problem for Plaintiff, though, involves the economic

17   loss rule.  This is not an insurance suit, and Plaintiff does

18   not allege physical injury, wrongful discharge, or fraudulent

19   inducement.  So, Plaintiff's fraud claim proceeds only if it

20   alleges a duty arising under tort law independent of a breach of

21   contract.  See BNSF, 2011 WL 3328398 at *6.

22       Two California cases are particularly relevant here.  In

23   Robinson Helicopter Co., Inc. v. Dana Corp., the court held that

24   the economic loss rule did not bar plaintiff's fraud claims

25   because a duty arose under tort law independent of the contract

26   breach.  34 Cal. 4th 979, 991 (2004).  Specifically, the

27   defendant breached the contract by providing nonconforming

28   clutches, but committed an independent tort by issuing false

1   certificates of conformance.  Id. at 990-91 ("By issuing false

2   certificates of conformance, [the defendant] unquestionably made

3   affirmative representations that Robinson justifiably relied on

4   to its detriment.  But for [these] misrepresentations...Robinson

5   would not have...used the nonconforming

6   clutches....[a]ccordingly, [the defendant's] tortious conduct

7   was separate from the breach itself, which involved [the

8   defendant's] provision of the nonconforming clutches.").

9   Conversely, in BNSF, the court held that the economic loss rule

10   barred Plaintiff's fraud claim because the fraudulent

11   misrepresentations were an "inseparable component" of the breach

12   of contract to pay.  Id. at *9.

13        Plaintiff contends that "StudentsFirst had a duty to

14   disclose [the] information because it was material to Plaintiff;

15   whether such information may also constitute a breach of the

16   Lease is incidental to said duty."  Opp'n to SF's MTD at 4.

17        This argument lacks teeth.  Forgetting that the exception

18   to the economic loss rule is "narrow in scope," Plaintiff cites

19   no case law to support its argument that a breach of contract

20   that is "incidental to said duty" falls within this narrow

21   exception.  And Plaintiff's FAC pokes holes in its own argument.

22   For instance, Plaintiff cites StudentsFirst's omissions to

23   support this claim and its breach of contract claim.  See id.

24   ¶¶ 40, 55-58 (emphasis added).  To make the overlap between

25   these claims even clearer, Plaintiff incorporates into its fraud

26   claim the allegations constituting contract breach.  Id. ¶ 54.

27   And, finally, all additional facts implicate the Lease.  See id.

28   ¶¶ 55, 59 (StudentsFirst "had no intention of continuing to

1   perform its obligations under the Lease"; Plaintiff "justifiably

2   relied on" StudentsFirst's concealment because "at the time,

3   [StudentsFirst was], and had been, in compliance of the Lease")

4   (emphasis added).  Simply put, StudentsFirst's omissions are

5   anything but "incidental" to StudentsFirst's duty to disclose

6   information.  Plaintiff has not shown that StudentsFirst's

7   omissions were separate from the breach itself, making this case

8   more comparable to BNSF than Robinson Helicopter.  Plaintiff

9   cannot recast its breach of contract claim as a tort claim.

10      Dismissal under Fed. R. Civ. P. 12(b)(6) with prejudice is

11  appropriate "only if it appears beyond doubt that the plaintiff

12  can prove no set of facts in support of his claim which would

13  entitle him to relief."  Navarro v. Block, 250 F.3d 729, 732

14  (9th Cir. 2001) (citations and internal quotation marks

15  omitted).  As discussed above, Plaintiff cannot plead facts

16  falling within the narrow exception required to state a fraud

17  claim under a concealment theory.  The Court therefore dismisses

18  Plaintiff's fraud claim with prejudice.

19      D.   Fourth Claim:  Civil Conspiracy

20      A civil conspiracy arises when two or more people agree to

21  a common plan or design to commit a tortious act.  See Kidron v.

22  Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1582 (1995).  To

23  state a claim, the plaintiff must allege "(1) the formation and

24  operation of a conspiracy, (2) wrongful conduct in furtherance

25  of the conspiracy, and (3) damages arising from the wrongful

26  conduct."  Id. at 1581.

27      Although "California recognizes a cause of action against

28  noncontracting parties who interfere with the performance of a

16

1    contract," a party cannot be held liable in tort for conspiracy

2    to interfere with its own contract.   See Applied Equip. corps.

3    v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 507-08, 513 (1994)

4    (original emphasis).   "One contracting party owes no general

5    tort duty to another not to interfere with the performance of

6    the contract; its duty is simply to perform the contract

7    according to its terms."   Id. at 514.

8        The allegations supporting this claim apply to both

9    Defendants.   Plaintiff states that Defendants "knowingly and

10   willfully conspired and agreed amongst themselves to

11   intentionally" (1) allow the Letter of Credit to reduce in half

12   before telling Plaintiff about their intent to merge; (2)

13   conceal this intent; (3) cause Plaintiff to believe its secured

14   Collateral was intact; (4) remove that secured Collateral to

15   deprive Plaintiff of its secured interest; and (5) hinder,

16   delay, and/or defraud Plaintiff in collecting its claim against

17   Defendants for breaching the Lease.   See FAC ¶ 64.

18        1.   StudentsFirst

19        StudentsFirst argues that Plaintiff cannot bring this claim

20   because a tort claim for interference with a contract does not

21   lie against a party to that contract.   See SF's MTD at 9.   Yet

22   Plaintiff maintains that it has stated a claim because it

23   alleged a conspiracy to commit a tortious act—not a conspiracy

24   to breach a contract.   See Opp'n to SF's MTD at 9.   Plaintiff's

25   argument is contradicted by the FAC and is without merit.

26        Plaintiff incorporates all previous allegations of its FAC

27   into this civil conspiracy claim, including breach of contract.

28   See FAC ¶ 62.   But, even if Plaintiff had not incorporated that

                                  17

1   claim, Plaintiff's additional allegations derive from the same

2   facts that support contract breach.   Indeed, Plaintiff states

3   that Defendants conspired with each other to conceal a breach of

4   contract, to conceal their intent to breach the contract, and to

5   conceal their intent to draw from the Letter of Credit, also in

6   breach of contract.   See id. ¶¶ 63-66 (citing Letter of Credit,

7   merger, transfer of assets, abandonment, removal of Collateral,

8   and refusal to pay rent).   Simply put, because the facts

9   supporting Plaintiff's civil conspiracy claim are an inseparable

10  component of its breach of contract claim, Plaintiff's argument

11  fails.   See supra Part II.C.2.   The Court finds that Plaintiff

12  cannot state a civil conspiracy claim against StudentsFirst and

13  grants StudentsFirst's request to dismiss this claim with

14  prejudice.

15                  2.   50CAN

16       Plaintiff does not dispute that conspiracy to breach a

17  contract is not a legally cognizable claim and it has conceded

18  that it has not alleged such a conspiracy.   Rather, Plaintiff

19  contends it has adequately alleged the existence of conspiracy

20  to commit a civil tort by 50CAN.   Opp'n to 50CAN MTD at 7-8.

21       No matter how much Plaintiff wants this Court to believe

22  that it has alleged a conspiracy claim to commit a tort,

23  stripped to its core, the conspiracy claim derives from

24  Plaintiff's breach of contract claim.   See supra Part II.C.2.

25  None of the allegations supporting this claim give rise to a

26  claim of civil conspiracy.   Given that the Court has dismissed

27  Plaintiff's fraud claim against StudentsFirst there is no basis

28  for this claim against 50CAN.   The Court grants 50CAN's request

                              18

1   to dismiss this claim with prejudice.

2          E.    Fifth Claim:  Common Counts

3          The common count is a general pleading seeking recovery of

4   money without specifying the nature of the claim.  See Title

5   Ins. Co. of Minnesota v. State Bd. of Equalization, 4 Cal. 4th

6   715, 731 (1992)(internal citations and quotation marks omitted).

7   It is not a specific cause of action, but rather "a simplified

8   form of pleading normally used to aver the existence of various

9   forms of monetary indebtedness." McBride v. Boughton, 123 Cal.

10  App. 4th 379, 394 (2004)(internal citations omitted).  To state

11  a claim, a plaintiff must allege "(1) a statement of

12  indebtedness in certain sum, (2) consideration, i.e., goods

13  sold, work done, etc., and (3) nonpayment.  Farmers Ins. Exch.

14  v. Zerin, 53 Cal. App. 4th 445, 460 (1997)(internal citation

15  omitted).

16         The allegations supporting this claim apply to both

17  Defendants.  Once again, Plaintiff incorporates all previous

18  allegations into its common counts claim, including breach of

19  contract.  See FAC ¶ 69.  Plaintiff adds that "[w]ithin the last

20  year, [StudentsFirst], and by way of merger and assumption of

21  all liabilities and obligations, 50CAN, became indebted to

22  Plaintiff in an amount subject to identification, but in an

23  amount no less than $877,090.88, as a result of [its] lease of

24  the Premises and the services provided by Plaintiff in

25  accordance therewith." Id. ¶ 70.  Plaintiff seeks compensatory

26  damages, interest, costs of suit, and any other relief the Court

27  deems proper.  See id. ¶ 72.

28  ///

1              1.    StudentsFirst

2        StudentsFirst argues that Plaintiff has not stated a common

3   counts claim because Plaintiff improperly restyles it as a

4   breach of contract claim.  SF's MTD at 9.  StudentsFirst adds

5   that Plaintiff has neither alleged a debt of a sum certain nor

6   identified what consideration Plaintiff gave to StudentsFirst

7   besides the Lease.  Id. at 10.  But Plaintiff challenges these

8   arguments, maintaining that it has alleged indebtedness in a

9   certain sum.  Opp'n to SF's MTD at 12 ("no less than

10  $877,090.88").  Plaintiff also states that its services, as

11  required under the Lease, satisfy the indebtedness element.  Id.

12  at 12-13.  And, finally, Plaintiff notes that StudentsFirst

13  never sought to dismiss the breach of contract claim, so the

14  common count claim "must survive."  Id. at 13.

15       The Court agrees with StudentsFirst that this claim cannot

16  survive but for slightly different reasons.  "[W]hen the common

17  count is based on an express contract, the element of

18  indebtedness is not satisfied where the plaintiff seeks damages

19  for breach...."  Mike Nelson Co. v. Hathaway, No. F 05-0208,

20  2005 WL 2179310, at *4-5 (E.D. Cal. Sept. 8, 2005).  Here,

21  Plaintiff centers its common counts claim on express contracts—

22  the Lease and the Parking Agreement—and Plaintiff seeks

23  compensatory damages.  See FAC ¶¶ 69-72.  Also, reading the

24  breach of contract allegations and the common count allegations

25  together, the common count allegations in fact seek damages for

26  breach.  See Hathaway, 2005 WL 2179310 at *5.  Indeed, once

27  again, Plaintiff incorporates into its common counts claim the

28  allegations supporting contract breach.  See FAC ¶ 69.

1    And, finally, that StudentsFirst did not move to dismiss

2  the breach of contract does not help Plaintiff's argument.

3  Because Plaintiff's common counts claim is duplicative of its

4  surviving breach of contract claim, the common counts claim

5  fails as a matter of law.  See Hathaway, 2005 WL 2179310 at *4-

6  5.  The Court grants StudentsFirst's request to dismiss

7  Plaintiff's common counts claim with prejudice.

8         2.   50CAN

9    Having previously held that Plaintiff has stated a breach

10  of contract claim against 50CAN, see supra Part II.A.2, the

11  Court concludes that the same reasons barring Plaintiff's common

12  counts claim against StudentsFirst apply here.  See supra Part

13  II.E.1.  Plaintiff cannot state a common counts claim against

14  50CAN, so the Court dismisses it with prejudice.

15     F.   Sixth Claim:  Declaratory Relief

16    The Declaratory Judgment Act allows a district court to

17  "declare the rights and other legal relations of any party

18  seeking such declaration, whether or not further relief is or

19  could be sought," but only "[i]n a case of actual controversy."

20  28 U.S.C. § 2201(a).  This remedy is a form of relief—not an

21  independent claim.  See Lane v. Vitek Real Estate Indus. Grp.,

22  713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010).  Designed to

23  resolve uncertainties or disputes that could result in future

24  litigation, declaratory relief operates prospectively and should

25  not redress past wrongs.  See United States v. Washington, 759

26  F.2d 1353, 1356-57 (9th Cir. 1985) (en banc).

27    Specifically, declaratory relief is appropriate when the

28  judgment will (1) "serve a useful purpose in clarifying and

21

settling the legal relations in issue"; and (2) "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." McGraw-Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 342 (9th Cir. 1966).  Stated differently, this remedy enables parties to shape their conduct to avoid a breach.  StreamCast Networks Inc. v. Ibis LLC, No. CV 05-04239, 2006 WL 5720345, at *3 (C.D. Cal. May 2, 2006).  Courts should grant declaratory relief to declare rights rather than to execute them.  See id. (internal citations and quotation marks omitted).

The allegations supporting this claim apply to both Defendants.  Plaintiff incorporates all previous allegations into its request for declaratory relief.  See FAC ¶ 73. Plaintiff explains that "[a] dispute has arisen and now exists between the parties to this action as to their rights, responsibilities, and obligations under the Lease."  Id. ¶ 74. Plaintiff states that "it has performed all obligations required of it under the Lease," but that Defendants argue that "they are excused from any further performance of the Lease."  Id.  So, Plaintiff "seeks a judicial determination" as to the parties' rights and obligations.  Id.

1.    StudentsFirst

StudentsFirst contends that declaratory relief is inappropriate because Plaintiff centers its FAC on StudentsFirst's alleged breach of contract—a past act.  See SF's MTD at 11 (emphasis added).  Yet Plaintiff argues that the case is ripe for judicial determination because Plaintiff "reasonably expects" that StudentsFirst will raise an affirmative defense

1   that it is excused from performing under the Lease.  Opp'n to

2   SF's MTD at 14.

3       StudentsFirst has the stronger argument.  An adequate

4   remedy already exists under Plaintiff's breach of contract

5   claim, making declaratory relief duplicative and unnecessary

6   here.  See Ellena v. Standard Ins. Co., No. 12-5401 SC, 2013 WL

7   3200614, at *3 (N.D. Cal. June 24, 2013) (concluding declaratory

8   relief claim duplicative of breach of contract claim because

9   deciding legality of Policy's language already at issue in

10  breach of contract claim); Valle v. JP Morgan Chase Bank, N.A.,

11  No. 11-cv-2453, 2012 WL 1205635, at *10 (S.D. Cal. Apr. 11,

12  2012)(holding that claim for declaratory relief fails because

13  based on same allegations supporting another cause of action).

14  The Court grants StudentsFirst's request to dismiss with

15  prejudice Plaintiff's claim for declaratory relief.

16              2.   50CAN

17      Having previously held that Plaintiff has stated a breach

18  of contract claim against 50CAN, see supra Part II.A.2, the

19  Court also grants 50CAN's request to dismiss with prejudice

20  Plaintiff's claim for declaratory relief for the same reasons

21  the claim fails against StudentsFirst.  See supra Part II.F.1.

22      G.   Seventh Claim:  California Business & Professions Code

23           Section 17200

24      California law prohibits "unfair competition," which

25  includes "any unlawful, unfair or fraudulent business act or

26  practice."  CAL. BUS. & PROF. CODE § 17200 (West 2016) ("UCL").  The

27  statute's scope is broad, and it governs anti-competitive

28  business practices as well as injuries to consumers.  See Cel-

1  <u>Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th

2  163, 180 (1999)(internal citations and quotation marks omitted).

3  A court may deem a practice unfair even if it is not illegal.

4  <u>See id.</u>

5      Enacted to protect both consumers and competitors by

6  promoting fair competition in commercial markets for goods and

7  services, the UCL is a meaningful consumer protection tool.  <u>See</u>

8  <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1152

9  (2003).  It "provides an equitable means through which both

10  public prosecutors and private individuals can bring suit to

11  unfair business practices and restore money or property to

12  victims of these practices."  <u>Id.</u> at 1150.  To state a claim, a

13  plaintiff "need only show that members of the public are likely

14  to be deceived."  <u>Linear Tech. Corp. v. Applied Materials, Inc.</u>,

15  152 Cal. App. 4th 115, 133 (2007)(internal citations and

16  quotation marks omitted).

17      But corporate plaintiffs face an uphill battle.  When a UCL

18  claim is based on a contract that does not involve the public or

19  individual consumers, a corporate plaintiff cannot use the

20  statute for the relief it seeks.  <u>See id.</u> at 135.

21      The allegations supporting this claim apply to both

22  Defendants.  After incorporating all previous allegations in this

23  claim (including those constituting contract breach), Plaintiff

24  states that "Defendants have engaged in 'unlawful,' 'unfair,'

25  and/or 'fraudulent' business acts or practices in an effort to

26  defraud their creditors, including, without limitation,

27  Plaintiff."  FAC ¶ 78.  Plaintiff specifies that Defendants have

28  "deceived Plaintiff, removed property and transferred substantial

1    assets in an effort to avoid and evade payments to Plaintiff,

2    and/or hinder or delay Plaintiff's ability to collect those sums

3    due and owing to it." Id.

4         1.   StudentsFirst

5         Characterizing the Lease as a breach of a commercial

6    contract with no adverse effects on consumer welfare,

7    StudentsFirst argues the UCL does not apply here.  See SF's MTD

8    at 9.  Plaintiff disagrees, contending that its UCL claim is

9    based on its fraud, fraudulent transfer, and civil conspiracy

10   claims—not its breach of contract claim.  Opp'n to SF's MTD at

11   12.  In response, StudentsFirst reiterates that, even if

12   Plaintiff's tort claims survive, Plaintiff still has not alleged

13   that this private dispute among corporate actors raises issues

14   that fall within the UCL's reach.  Reply, ECF No. 17, at 4 ("SF's

15   Reply").

16        The Court agrees with StudentsFirst.  Notwithstanding

17   Plaintiff's argument that its UCL claim is not based on the

18   Lease, at its core, this case involves a dispute about the

19   economic relationship between commercial parties.  Plaintiff's

20   incorporating here allegations supporting its breach of contract

21   claim augments this conclusion.  See FAC ¶ 77.  See also Dollar

22   Tree Stores Inc. v. Toyama Partners LLC, 875 F. Supp. 2d 1058,

23   1083 (N.D. Cal. 2012) (holding that plaintiff failed to state a

24   UCL claim because plaintiff alleged that that claim was based on

25   its breach of contract claim).  Additionally, the Lease defined

26   only Plaintiff and StudentsFirst's relationship—it did not

27   implicate potential other creditors or the general public.  See

28   generally Exh. A.  This too shows that Plaintiff cannot state a

1    UCL claim.  <u>See In re ConocoPhillips</u>, No. 09-cv-02040, 2011 WL

2    1399783, at *3 (N.D. Cal. Apr. 13, 2011)(holding plaintiff cannot

3    assert UCL claim because parties' relationship defined by their

4    contractual arrangement and did not involve the general public or

5    individual consumers who were also parties to the contract).

6         In sum, the Court finds that Plaintiff cannot state a UCL

7    claim against StudentsFirst because § 17200 does not protect

8    commercial disputes between contracting parties that do not

9    involve the general public or individual consumers.  The Court

10   grants StudentsFirst's request to dismiss this claim with

11   prejudice.

12             2.   <u>50CAN</u>

13        The Court also finds that Plaintiff fails to state a UCL

14   claim against 50CAN for the same reasons Plaintiff fails to state

15   this claim against StudentsFirst.  <u>See supra</u> Part II.G.1.  The

16   Court grants 50CAN's request to dismiss the UCL claim with

17   prejudice.

18

19                      III.   ORDER

20        For the reasons set forth above, the Court GRANTS in part

21   and DENIES in part Defendants' Motions to Dismiss as follows:

22        1.   Defendant 50CAN's motion to dismiss the breach of

23   contract claim is DENIED;

24        2.   Defendants' motions to dismiss the fraudulent transfer

25   claim are DENIED;

26        3.   Defendants StudentsFirsts' motion to dismiss the fraud

27   claim is GRANTED WITH PREJUDICE;

28        4.   Defendants' motions to dismiss the civil conspiracy

1  claim are GRANTED WITH PREJUDICE;

2      5.   Defendants' motions to dismiss the common counts claim

3  are GRANTED WITH PREJUDICE;

4      6.   Defendants' motions to dismiss the claim for

5  declaratory relief are GRANTED WITH PREJUDICE; and

6      7.   Defendants' motions to dismiss the UCL claim are

7  GRANTED WITH PREJUDICE.

8      IT IS SO ORDERED.

9  Dated: February 13, 2017

10

11  _____
   JOHN A. MENDEZ,
   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28