1   SMITH, MCDOWELL & POWELL,
    A LAW CORPORATION
2   C. Jason Smith, SBN 237966
    Brandon T. Wright, SBN 294305
3   100 Howe Avenue, Suite 208 South
    Sacramento, CA 95825
4   Telephone:  (916) 569-8100
    Facsimile:  (916) 848-3777
5
    Attorneys for Plaintiff,
6   HALE BROS. INVESTMENT COMPANY, LLC

7

8                    UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10                      SACRAMENTO DIVISION

11   HALE BROS. INVESTMENT COMPANY,     )   Case No.:  2:16-cv-02284-JAM-EFB
     LLC, a California limited liability company,  )
12                                      )
                                        )
13          Plaintiff,                  )   **PLAINTIFF/COUNTERDEFENDANT,**
                                        )   **HALE BROS. INVESMENT COMPANY,**
14   vs.                                )   **LLC'S, RESPONSE TO DEFENDANTS'**
                                        )   **STATEMENT OF UNDISPUTED FACTS**
15                                      )   **IN SUPPORT OF ITS MOTION FOR**
                                        )   **SUMMARY JUDGMENT**
16   STUDENTSFIRST INSTITUTE, a District of )
     Columbia        non-profit      corporation; )
17   STUDENTSFIRST, a District of Columbia non- )
     profit corporation; 50CAN, INC., a Connecticut )  Hearing Date:  January 30, 2018
18   corporation; and DOES 1 through 50 inclusive. )  Hearing Time: 1:30 p.m.
                                        )   Department:   Courtroom 6
19                                      )   Judge:        The Honorable John A. Mendez
            Defendants.                 )
20   _____)  Trial Date:    April 30, 2018
     STUDENTSFIRST INSTITUTE, et al.,   )
21                                      )
            Counterclaimants,           )
22                                      )
                                        )
23   vs.                                )
                                        )
24   HALE  BROS.  INVESTMENT  COMPANY,  )
     LLC,                               )
25                                      )
                                        )
26          Counterdefendant.           )
                                        )
27   _____)
     ///
28

                                    1

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

Pursuant to Fed. Rule Civ. Proc. Rule 56 and Local Rule 260, Plaintiff/Counter Defendant, HALES BROS. INVESTMENT COMPANY, LLC, a California limited liability company ("Plaintiff"), hereby submits the following response to Defendants, STUDENTSFIRST INSTITUTE, STUDENTSFIRST, and 50CAN's (collectively, "Defendants") Statement of Undisputed Facts in Support of Its Motion for Summary Judgment:

| DEFENDANTS' UNDISPUTED FATCS ABND SUPPORTING EVIDENCE | PLAINTIFF'S OBJECTION AND RESPONSE |
|---|---|
| 1. On October 26, 2011, Plaintiff entered into a commercial lease (the "Lease") with StudentsFirst for office space in downtown Sacramento, California (the "Premises") for a term of sixty-seven months, ending in October, 2017.<br><br>First Amended Complaint (Oct. 10, 2016), ECF No. 8 ("FAC") ¶ 8, Ex. A; Plaintiff's Answer and Affirmative Defenses (Mar. 17, 2017), ECF No. 25 ("Pl.'s Answer") ¶ 9 to Defendant's Counterclaim (Feb. 24, 2017), ECF No. 24. | Undisputed. |
| 2. The parties entered into a related agreement to lease 12 parking spaces for a term of sixty-seven months, ending in October 2017 (the "Parking Agreement").<br><br>FAC ¶ 9, Ex. B; Pl.'s Answer ¶ 10. | Undisputed. |
| 3. StudentsFirst secured the Lease by paying a security deposit in the amount of $41, 368. 86 (the "Security Deposit").<br><br>FAC Ex. A at p. 3; Pl.'s Answer ¶ 21. | Undisputed, but to the extent this fact is being offered to support the full extent of StudentsFirst's security, it is not complete as their obligations under the Lease were also secured by a standby, unconditional, irrevocable, and transferable Letter of Credit (the "Letter of Credit") in the initial face amount of $1,000,000.00.<br><br>See Plaintiff's Disputed Material Fact ("PDMF") #8 at the end of this document. |
| 4. StudentsFirst obtained a Letter of Credit (the "Letter of Credit") in the initial amount of $1,000,000. 00. | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| FAC ¶ 10; Pl.'s Answer ¶ 13. | |
| 5. StudentsFirst took possession of the Premises on or about March 6, 2012.<br><br>FAC ¶ 10; Pl.'s Answer ¶ 11. | Undisputed. |
| 6. StudentsFirst started making its monthly rental payments on October 6, 2012.<br><br>FAC ¶ 10; Pl.'s Answer ¶ 11. | Undisputed. |
| 7. StudentsFirst continued to pay rent through June 2016.<br><br>FAC ¶ 10; Pl.'s Answer ¶ 16. | Undisputed to the extent "rent" in this fact refers to base and parking rent under the Lease. |
| 8. Section 11.6(a) of the Lease provides for a reduction in the security under the Letter of Credit at the end of the 48th month of the lease term.<br><br>FAC ¶ 15, EX. A at pp. 33-34. | Disputed. Section 11.6(a) of the Lease provides for a reduction in the security under the Letter of Credit at the end of the 48th month of the lease term only if StudentsFirst is not then in default of the lease.<br><br>See PDMF #8 |
| 9. Pursuant to Section 11.6(a) of the Lease, on March 21, 2016, the Letter of Credit was reduced to $500,000 .00.<br><br>FAC ¶ 15, Ex. A at pp. 33-34; Pl.'s Answer ¶ 13. | Disputed to the extent this fact is being offered to assert that the reduction was proper under the terms of the Lease. Because StudentsFirst was in default of the Lease at the time the Letter of Credit reduced, such reduction was improper.<br><br>See PDMF ##8, 11, 15, 30, 33, 34, 38, 48, 49, 59, 63, 64, 65, 66, 67, 68, 69, 73, 74 |
| 10. StudentsFirst vacated the premises on or before July 1, 2016.<br><br>Plaintiff's Response to Defendant StudentsFirst Institute's Request for Admissions, Set One (Jan. 20, 2017) ("Pl.'s Resp. to RFA, Set. One") No. 4. | Undisputed. |
| 11. In discovery, Defendants provided an asset transfer agreement.<br><br>Declaration of Christopher A. Tessone in Support of StudentsFirst Institute, StudentsFirst and 50CAN, Inc. 's Motion for Summary Judgment ("Tessone Decl."), | Disputed to the extent Defendants contends that they have provided just one asset transfer agreement in discovery. Defendants have provided multiple versions of an asset transfer agreement, and several more versions of the asset list attached thereto.<br><br>See PDMF #79 |

3

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| ¶ 4, Exs. A, B [Asset Transfer Agreement dated June 30, 20L6 (PC00000083-128, PC00000050-70). | |
| 12. The asset transfer agreement demonstrates that the parties did not enter into an agreement that would constitute a merger.<br><br>Tessone Decl. ¶ 5. | Disputed. Multiple versions of an asset transfer agreement were produced to Plaintiff, with multiple versions of the attached asset list. The asset transfer agreement identifies in its recitals that the purpose of the agreement is for StudetnsFirst and 50CAN to merge their corporations. Further, the nature of the transactions, the testimony ow relevant witness, and documents produced in discovery by Defendants support Plaintiff's contention that whatever Defendants may have called the transaction, it was a merger of their corporations.<br><br>See PDMF ##31-54, 79. |
| 13. In the asset transfer agreement the parties agreed that 50CAN would continue the operation of certain programs previously sponsored by StudentsFirst, and that StudentsFirst would transfer to 50CAN funding for the continued viability of those programs.<br><br>Tessone Decl. ¶ 4, Exs. A, B. | Disputed to the extent this fact is being offered for the truth asserted. The asset transfer agreement identifies in its recitals that the purpose of the agreement is for StudetnsFirst and 50CAN to merge their corporations. Further, the nature of the transactions, the testimony ow relevant witness, and documents produced in discovery by Defendants support Plaintiff's contention that whatever Defendants may have called the transaction, it was a merger of their corporations.<br><br>See PDMF ## 31-54 |
| 14. StudentsFirst did not assign the Lease or the Parking Agreement to 50CAN.<br><br>Tessone Decl. ¶ 6. | Disputed. StudetnsFirst's merger with 50CAN constituted an assignment of the Lease and Parking Agreement for purposes of continuing successor liability.<br><br>See PDMF ## 31-54 |
| 15. 50CAN did not enter into an agreement to assume the obligations of StudentsFirst under the Lease or the Parking Agreement. | Disputed. StudetnsFirst's merger with 50CAN constituted an assignment of the Lease and Parking Agreement for purposes of continuing successor liability. |

4

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| Tessone Decl. ¶ 6. | See PDMF ## 31-54 |
| 16. Plaintiff admits that it leased the Premises to a new tenant and entered into the new lease on or about Septemebr 6, 2016 ("Mitigation Lease").<br><br>Plaintiff's Disclosure of Rebuttal and Supplemental Expert Report of Paul Petrovich (Oct. 13, 2017) ("Petrovich Report") at p. 4. | Undisputed. |
| 17. Under the Mitigation Lease, Plaintiff chose to offer rent abatements for the first five months of the new lease, meaning the new tenant paid zero rent during that period.<br><br>Petrovich Report. at p. 7; Plaintiff's Initial Disclosures, ("Pl.'s Initial Disc.") p. 9. | Disputed to the extent this fact implies that Plaintiff did not seek to adequately mitigate its damages. Plaintiff offered the new tenant abated rent for the first 5 months of its lease to incentivize it to perform under the terms of its lease.<br><br>See PDMF #12 |
| 18. After the five-month free rent period in the Mitigation Lease, Plaintiff anticipates receipt of rent payments of $216,000 through October 31, 2017.<br><br>Petrovich Report at p. 7; Plaintiff's Response to Defendant StudentsFirst Institute's Request for Admissions, Set. Two (Oct. 19, 2017) ("Pl.'s Resp. to RFA, Set Two") No. 9. | Undisputed. |
| 19. After the five-month free rent period in the Mitigation Lease, Plaintiff anticipates receipt of parking rent payments of $14,400 through October 31, 2017.<br><br>Petrovich Report at p. 7; Pl.'s Resp. to RFA, Set Two No. 9. | Undisputed. |
| 20. Plaintiff retained the security deposit of $41,368.86 provided by StudentsFirst.<br><br>Plaintiff's Response to Defendant StudentsFirst Institute's Special Interrogatories, Set One (Oct. 19, 2017) ("Pl.'s Resp. to Rog.") No. 7. | Undisputed. |
| 21. Plaintiff has drawn $500,000 from the Letter of Credit provided by StudentsFirst. | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| Pl.'s Resp. to Rog. No. 7. | |
| 22. Plaintiff has mitigated it loss in the amount of $771,768.86.<br><br>Petrovich Report at p. 7; Pl.'s Resp. to RFA, Set Two No. 9; Pl.'s Resp. to Rog. No. 7. | Undisputed. |
| 23. Had Tenant not breached, Tenant would have owed Plaintiff total base rent of $658,831.83 and total parking rent of $37,250.32 for the remaining months of the Lease (July 2016 through October 2017).<br><br>Petrovich Report at p. 7; Pl.'s Resp. to RFA, Set Two Nos. 6, 7; Pl.'s Resp. to Rog. No. 7. | Disputed. Had StudentsFirst not breached the Lease, it would have still owed Plaintiff $554,457.60 in as yet unamortized tenant improvements.<br><br>See PDMF ##1-2, and 4-6 |
| 24. Plaintiff spent $2,788 to relet the Premises.<br><br>Pl.'s Resp. to Rog. No. 11. | Disputed. As of October 18, 2017, Plaintiff's out of pocket costs for modifications was $2,788.00. This amount does not reflect the out of pocket costs for installation of the carpet tile as Responding Party has not yet received the invoice for the installation services. Further, discovery is ongoing and Plaintiff has reserved the right to amend and/or supplement its response.<br><br>See PDMF #80 |
| 25. Plaintiff contends that late payment fees in the amount of $23,284.11 are due under the lease.<br><br>Petrovich Report at p. 7-8; Pl.'s Resp. to RFA, Set Two No. 9; Pl.'s Resp. to Rog. No. 7. | Disputed. Plaintiff contends late payment fees in the amount of *at least* $23,284.11 are due under the lease.<br><br>See PDMF #18 |
| 26. The total sum of any loss Plaintiff allegedly incurred as a result of non-payment of rent and the costs of leasing the Premises to a new tenant is $722,154.26.<br><br>Petrovich Report at p. 7; Pl.'s Resp. to RFA, Set Two No. 9; Pl.'s Resp. to Rog. No. 7, 11. | Disputed. Plaintiff claims losses in excess of $722,154.26.<br><br>See PDMF ##14, 15, 18, 22, 24, 26, 27, 28, 29 |
| 27. Petrovich seeks a tenant improvement allowance ($702,312.96), leasing commissions ($31,541.28), and previously-abated rent ($281,991.22). | Undisputed. |

6

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| Petrovich Report at p. 8; Pl.'s Resp. to Rog. No. 7; Pl.'s Initial Disc. At p. 10-11. | |

| PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FATCS | SUPPORTING EVIDENCE |
|---|---|
| 1. Pursuant to the Lease, Plaintiff agreed to pay, subject to reimbursement, an allowance toward the total cost of construction and installation of certain tenant improvements ("Tenant Improvements"), requested by StudentsFirst and uniquely designed for their purposes. | Declaration of Paul Petrovich in Support of Plaintiff's Opposition to Motion for Summary Judgment ("P. Decl."), ¶6; Exhibit A to P. Decl. (Lease agreement). |
| 2. Plaintiff's portion of the tenant improvement cost was $832,365.00 ("Tenant Improvement Allowance"), which Plaintiff paid prior to StudentsFirsts' taking possession of the Premises. | P. Decl., ¶6; Exhibit A to P. Decl. (Lease agreement). |
| 3. Per the terms of the Lease, Plaintiff also paid, subject to reimbursement, leasing commissions ("Leasing Commissions") in the amount of $118,280.00. | P. Decl., ¶7; Exhibit A to P. Decl. (Lease agreement). |
| 4. Pursuant to Section 11.6(c) of the Lease, StudentsFirst's repayment of Leasing Commissions was amortized over five-year period, and the Tenant Improvement Allowance was amortized over 10 years at 6% interest. These amortization periods were to commence upon the date StudentsFirst commenced paying rent. | P. Decl., ¶8; Exhibit A to P. Decl. (Lease agreement). |
| 5. The Tenant Improvement Allowance, amortized over 10 years at 6% interest, resulted in StudentsFirst owing to Plaintiff the total sum of $1,108,915.20 for the Tenant Improvements. | Exhibit A to P. Decl. (Lease agreement). |
| 6. Because the Tenant Improvements Allowance was amortized over a period of 10 years while the Lease only called for 5 years of monthly rental payments, per the Lease, even had StudentsFirst fully performed, which Plaintiff denies, there still would have been due and owing to Plaintiff the sum of $554,457.60 for the Tenant Improvements. | Exhibit A to P. Decl. (Lease agreement). |
| 7. StudentsFirsts' obligations under the Lease, including, without limitation, payment of rent, Tenant Improvements, and Leasing | P. Decl., ¶9; Exhibit A to P. Decl. (Lease agreement). |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| Commissions, was secured with a security deposit in the amount of $41,368.86 (the "Security Deposit"). | |
| 8. A standby, unconditional, irrevocable, and transferable Letter of Credit (the "Letter of Credit") in the initial face amount of $1,000,000.00 was provided to Plaintiff for security for various furniture, fixtures, and equipment, and certain other promises made by StudentsFirst per the terms of the Lease. Reduction of the Letter of Credit under the terms of the Lease was contingent upon StudentsFirst not being in default of the Lease. | P. Decl., ¶9; Exhibit A to P. Decl. (Lease agreement). |
| 9. Pursuant to Section 11.6(c) of the Lease, the proceeds of the Letter of Credit constitute Plaintiff's sole and separate property (and not StudentsFirst's property) and Plaintiff may use said proceeds to reimburse itself for the cost of the Tenant Improvement Allowance (plus interest thereon) and any leasing commissions or fees paid by Plaintiff to the brokers associated with the Lease. | P. Decl., ¶9; Exhibit A to P. Decl. (Lease agreement). |
| 10. Pursuant to Section 3.2 of the Lease, Plaintiff agreed, as incentive for StudentsFirst's continued and full performance under the Lease, to forego rental payment for the first seven months of the Lease, contingent upon StudentsFirst's full performance thereunder. | P. Decl., ¶10; Exhibit A to P. Decl. (Lease agreement). |
| 11. StudentsFirst breached its lease with Plaintiff by, among other things, failing to pay the required base rent for the months of July 2016 through September 2016 in the amount of $40,397.76 per month, and October 2016 through October 2017 in the amount of $41,368.86 per month, for total unpaid base rent in the sum of $658,831.83. | Plaintiff's Initial Disclosures; Plaintiff's Disclosure of Rebuttal and Supplemental Expert Report of Paul Petrovich |
| 12. Pursuant to its duty to mitigate its damages, Plaintiff has managed to secure a new tenant (the "Tenant") for the Premises. Tenant's lease commenced October 1, 2016, however, to incentivize Tenant to continue to perform its obligations under their lease for the full term, no rent was due for the first five months of their lease. | P. Decl., ¶20 |

8

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| 13. Commencing March 2017, and continuing through December 31, 2017, Tenant has paid monthly base rent of $27,000.00. *Id.* Notably, this is considerably less than the $41,368.86 per month StudentsFirst was required to pay for the same period pursuant to the Lease. | P. Decl., ¶20 |
| 14. Accounting for the offset of the Tenant's base rent payments, there still remains a difference in what StudentsFirst would have paid had they not breached the Lease and what the Tenant is paying for the same period of time in the amount of no less than $442,831.83. | P. Decl., ¶20; Plaintiff's Initial Disclosures; Plaintiff's Disclosure of Rebuttal and Supplemental Expert Report of Paul Petrovich |
| 15. StudentsFirst breached its parking agreement with Plaintiff by, among other things, failing to pay the required parking rent for the months of July 2016 through September 2016 in the amount of $2,280.00 per month, October 2016 in the amount of $2,330.32, and November 2016 through October 2017 in the amount of $2,340.00 per month, for total unpaid parking rent in the sum of $32,250.32. Tenant has only paid a total of $14,400.00 in parking rent for this same period, leaving a difference of at least $22,850.32 due and owing to Plaintiff. | P. Decl., ¶21; Plaintiff's Initial Disclosures; Plaintiff's Disclosure of Rebuttal and Supplemental Expert Report of Paul Petrovich |
| 16. Pursuant to Section 25.1 of the Lease, StudentsFirst is also liable for late charges in the amount of 5% of the delinquent installment of rent if such rent is not received, in full, by Plaintiff within 5 days of the date the rent is due. | P. Decl., ¶22, Exhibit A to P. Decl. (Lease agreement). |
| 17. StudentsFirst failed to pay any portion of the base rent or parking rent due, commencing July 2016 and continuing through October 2017. | P. Decl., ¶22, Exhibit A to P. Decl. (Lease agreement). |
| 18. Plaintiff is entitled to late charges of at least $22,141.59 (which sum takes into account Plaintiff's mitigated damages) for failure to pay the base rent, and $1,142.52 (which sum takes into account Plaintiff's anticipated mitigated damages) for failure to pay the parking rent. | P. Decl., ¶22, Exhibit A to P. Decl. (Lease agreement). |
| 19. Section 3.2 of the Lease provides that the free rent or fully abated rent (the "Abated Rent") StudentsFirst received during the initial | P. Decl., ¶22, Exhibit A to P. Decl. (Lease agreement). |

9

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| seven (7) months of the lease shall immediately become due and payable if StudentsFirst is in material default under the lease (as is the case here). | |
| 20. The Abated Rent was offered in consideration for, and indeed, was contingent upon, StudentsFirst's fulfillment of its obligations under the terms of the Lease. | P. Decl., ¶22, Exhibit A to P. Decl. (Lease agreement). |
| 21. The parties expressly agreed that in the event of StudentsFirst's default, it would not be entitled to the benefit of seven-months free rent, and that Plaintiff would be under no obligation to continue to confer said benefit on StudentsFirst. | P. Decl., ¶22, Exhibit A to P. Decl. (Lease agreement). |
| 22. The monthly office rent during that seven-month (7) period was $37,484.46 per month for a total of $262,391.22 abated office rent, and the monthly parking rent for the 16 parking stalls leased by StudentsFirst during that same abatement period was $175.00 per parking stall per month for a total of $19,600.00 abated parking rent. Accordingly, the total abated rent that is now due and payable is $281,991.22. | P. Decl., ¶22, Exhibit A to P. Decl. (Lease agreement). |
| 23. Pursuant to Sections 1.1(17) and 11.6(c) of the Lease, StudentsFirst agreed to pay tenant improvement allowance in the sum of $832,365.00, amortized over 10 years at 6% interest, for a total of $9,240.96 per month. | P. Decl., ¶24; Exhibit A to P. Decl. (Lease agreement). |
| 24. Pursuant to the agreed upon 10-year amortization period, there was 76 months remaining unpaid as of the date of StudentsFirst vacated the Premises and ceased making its required rent payments. Accordingly, there is currently due and owing to Plaintiff the sum of at least $702,312.96 in unpaid tenant improvement allowance costs. | P. Decl., ¶24; Exhibit A to P. Decl. (Lease agreement). |
| 25. Pursuant to Section 11.6(c) of the Lease, StudentsFirst agreed to pay leasing commissions in the total sum of $118,280.00, amortized over a period of 5 years, for a total of $1,971.33 per month. | P. Decl., ¶25; Exhibit A to P. Decl. (Lease agreement). |
| 26. StudentsFirst vacated the Premises and ceased making its required rent payment under the Lease with 16 months remaining therein. Accordingly, there is currently due | P. Decl., ¶25 |

10

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| and owing to Plaintiff the sum of at least $31,541.28 in unpaid leasing commissions. | |
| 27. StudentsFirst is liable for interest on all unpaid sums owing Plaintiff at the legal rate of 10% per annum, commencing no later than July 1, 2016, the date it ceased paying rent. | Plaintiff's Initial Disclosures; Plaintiff's Disclosure of Rebuttal and Supplemental Expert Report of Paul Petrovich. |
| 28. As of the date of this Opposition, Plaintiff contends there is due and owing to Plaintiff the sum of at least $102,871.32. Further, interest continues to accrue at a rate of $186.70 per day. | Plaintiff's Initial Disclosures; Plaintiff's Disclosure of Rebuttal and Supplemental Expert Report of Paul Petrovich. |
| 29. Plaintiff is entitled to the unamortized attorneys' fees it incurred in connection with entering into the Lease pursuant to Section 11.2(b)(4) of the Lease, as well as all reasonable attorneys' fees and costs it has and will continue to incur in connection with the enforcement of the Lease pursuant to Section 11.3. The exact amount of these sums are yet undetermined, and will continue to increase the longer this matter goes unresolved. | P. Decl., ¶26; Exhibit A to P. Decl. (Lease agreement). |
| 30. StudentsFirst and 50CAN began discussing a merger of their corporations at least as early as December 2015. | Declaration of Brandon T. Wright in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Wright Decl."), ¶5, Ex. No. 2 – Excerpts of Deposition of Kellen Arno ("Arno Depo"), pp. 30: 4-10; 33:17-19; Wright Decl., ¶10, Ex. 6 - Defendants' Production of Documents, Bate Stamp #PC00000419 (email from Jim Blew to Marc Porter Magee and Vallay Varro dated December 13, 2015). |
| 31. It was the parties desire to consolidate their business operations by transferring all StudentsFirst operational support capacities to 50CAN, and for 50CAN to assume limited amounts of StudentsFirst's state advocacy work. | Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, pp. 37: 25; 38:1-6. |
| 32. Consolidation of support services was believed to be an efficient use of sources, and the larger combined company would have a greater impact, which would ultimately be preferable for both. | Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Dep, pp. 31: 24-25; 32: 1-17 and 24-25; and 33: 1-7. |
| 33. Accordingly, on January 13, 2016, the StudentsFirst board of directors enthusiastically approved exploring a formal merger with 50CAN. | Wright Decl., ¶9, Ex. 5 -Defendants' Production of Documents, Bate Stamp # PC00000185 (email from Jim Blew to Kellen Arno, Marc Porter Magee, Vallay Varro, Lisa |

11

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| | Gibes, and Ed Kirby dated December 13, 2015). |
| 34. On or about March 29, 2016, StudentsFirst and 50CAN formally and publicly announced their merger via a press release (the "Press Release") prepared by Kellen Arno ("Arno") of StudentsFirst. | P. Decl., ¶27; Exhibit E to P. Decl. (Press Release dated March 29, 2016); Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, p. 61: 2-3 |
| 35. Before release, the Press Release was reviewed and commented upon for revision by Michelle Rhee, founder of StudentsFirst, Jim Blew, then President of StudentsFirst, and Marc Porter Magee, President of 50CAN. | Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, pp. 54:14, 16; 56: 3-9; 61: 7-8 |
| 36. The Press Release states that "Marc Porter Magee, Ph.D., founder of 50CAN, will serve as the CEO of the combined organization with 50CAN's Vallay Varro serving in the role of president." | Exhibit E to P. Decl. (Press Release dated March 29, 2016) |
| 37. The Press Release also states that "Sandy Vargas, president and CEO of the Minneapolis Foundation, will serve as the board chair." Sandy Vargas was a member of the board of 50CAN and the Minneapolis Foundation was a funder of 50CAN. | Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, pp. 62:20-25; 63: 2-3 |
| 38. At the time of the Press Release, it was already determined that StudentsFirst's operations in Sacramento would cease and be carried on by 50CAN in Washington D.C. | Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, p. 69: 20-24 |
| 39. Arno, who prepared the Press Release, chose the adage "merge" to refer to the transaction between the entities, and described it as a combining of the companies, has testified that at the time he drafted the Press Release, he understood the term "merger" to mean "two organizations in some capacity forming together." | Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, pp. 38: 24-25; 39:1-3 |
| 40. Even pursuant to the Asset Transfer Agreement attached to the Declaration of Christopher Tessone as Exhibit A, it states in the recitals that "StudentsFirst and StudentsFirst Institute on the one hand, and 50CAN Action Fund and 50CAN on the other hand, agree that it is in their best respective interests to **merge** their operations, in order to create a new, more effective and more sustainable organization that fulfills the purposes described above." (Emphasis | Declaration of Christopher A. Tessone in Support of Defendants' Motion for Summary Judgment, Exhibit A |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| added). | |
| 41. Deanna Lord ("Lord"), Chief Financial Officer for StudentsFirst, sent an email to Chris Tessone and Drew Stanecki of 50CAN dated April 21, 2016, which identifies an email chain[1] which refers to the transaction between StudentsFirst and 50CAN as a "technical merger", a "stock sale", and a "sale of the organization", and "on and on". | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Deposition of Deanna Lord ("Lord Depo"), pp. 105, 7-25; 106: 1-10. |
| 42. Defendants contend that the transaction between StudentsFirst and 50CAN constituted an agreement to continue operation of certain programs previously sponsored by StudentsFirst, but at the time of the Press Release it was determined that StudentsFirst's national operations would be continued to be carried on by 50CAN in Washington D.C., and there was no determination as to which of StudentsFirst's specific programs would be carried on by 50CAN. | Defendants' Undisputed Fact ("UF") No. 13; Arno Depo, p. 69: 20-24; Arno Depo, p. 65: 16-24 |
| 43. StudentsFirst's founder, Michelle Rhee, may have been brought on as a board member of 50CAN post-merger. | Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, p. 64: 2-5. |
| 44. StudentsFirst's President, Jim Blew, continued on as an employee of 50CAN post-merger, and his duties for 50CAN consisted entirely of duties he was performing for StudentsFirst. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, p. 51: 4-6; Wright Decl., ¶4, Ex. No. 1 – Excerpts of Deposition of Christopher A. Tessone ("Tessone Depo"), pp. 61: 24; 65: 3-9. |
| 45. All of StudentsFirst's assets were transferred to 50CAN except a few computers, which were given to employees of StudentsFirst, and some furniture and fixtures, which StudentsFirst sold. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, p. 58:21-25; 59:1-8 |
| 46. Several assets, including cash, electronic files and records, SalesForce contract, of StudentsFirst was transferred to 50CAN prior to execution of the supposed Asset Transfer Agreement. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, pp. 100: 19-21; 101: 1-230; Tessone Depo p. 88: 1-4; Wright Decl., ¶11, Ex. 7 - Defendants' Production of Documents, Bate Stamp # PC00000081-82 (SalesForce Assignment Agreement). Declaration of Christopher A. Tessone in Support of Defendants' Motion for Summary Judgment, Exhibit A |

[1] The email chain referenced in this email has not been produced to Plaintiff, despite request.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

| | |
|---|---|
| 47. StudentsFirst Sacramento staff to transfer files, databases, software, equipment, et cetera to 50CAN from April 4th to April 29th | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, p. 53: 17-22; Wright Decl., ¶7, Ex. 4 - Defendants' Production of Documents, Bate Stamp # PC000000411-412 and PC0000455-472 (Email from Jim Blew to StudentsFirst board with copies to Marc Porter Magee and Vallay Varro dated April 15, 2016, and attached board meeting agenda (redacted)) |
| 48. As of April 15, 2016, it was the intent of StudentsFirst to transfer its remaining assets, primarily cash, to 50CAN between July and September 2016. | Wright Decl., ¶7, Ex. 4 - Defendants' Production of Documents, Bate Stamp # PC000000411-412 and PC0000455-472 (Email from Jim Blew to StudentsFirst board with copies to Marc Porter Magee and Vallay Varro dated April 15, 2016, and attached board meeting agenda (redacted)) |
| 49. All of StudentsFirst intellectual property ("IP") assets, including trademarks, copyright, and domain names and social media accounts were transferred to 50CAN, who continued to use the StudentsFirst branding for some time after the merger. | Declaration of Christopher A. Tessone in Support of Defendants' Motion for Summary Judgment, Exhibit A; Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, pp. 56:18-25; 57: 1-18. |
| 50. StudentsFirst filed a final tax return for 2015/2016 tax year – no remaining assets at that time. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, pp. 95:24-25; 96:1. |
| 51. Despite its retention of cash for payment of other liabilities, no cash was retained by StudentsFirst for payment of its liabilities to Plaintiff | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, p. 130: 6-12. |
| 52. 50CAN paid at least one liability of StudentsFirst that was not included on the Asset Transfer Agreement, namely Lord's invoice for consulting work performed in 2017 for StudentsFirst. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, pp. 122:18-25; 123:1-4. |
| 53. Pursuant to the Asset Transfer Agreement attached to the Declaration of 50CAN's Christopher Tessone, one of the assets transferred from StudentsFirst to 50CAN was "StudentsFirst/StudentsFirst Institute Cost Sharing Agreements". This cost sharing agreement refers to an agreement between StudentsFirst and StudentsFirst Institute for payment for overhead expenses. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, pp. 116: 3-9 |
| 54. There is no adequate consideration offered by 50CAN under the Asset Transfer Agreement. | Declaration of Christopher A. Tessone in Support of Defendants' Motion for Summary Judgment, Exhibit A. |

14

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| 55. In the weeks leading up to April 29, 2016, Plaintiff, who occupies an office on the floor above the Premises, became aware of a significant number of layoffs occurring at StudentsFirst, and noticed that the office was being run by a skeleton crew of what appeared to be roughly five or so people, when there had a few months prior been more than 50 employees of StudentsFist working out of the Premises. | P. Decl., ¶11 |
| 56. Plaintiff further confirmed the limited number of people working out of the Premises by looking at the entries recorded by their access cards. | P. Decl., ¶11 |
| 57. Concerned, in April 2016, Plaintiff requested StudentsFirst provide Plaintiff a copy of their financials. | P. Decl., ¶11 |
| 58. In response, Kellen Arno, StudentsFirsts' Vice President of Strategy and Communications, requested, via email dated April 25, 2016, a meeting with Plaintiff to discuss the matter. | P. Decl., ¶12; Exhibit C to P. Decl. (email exchange between Arno and Petrovich); Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, p. 17: 22 |
| 59. Arno's email states, "We've had some changes to our organization recently and as a result it is our intent to vacate the building prior to the termination of our lease." | P. Decl., ¶12; Exhibit C to P. Decl. (email exchange between Arno and Petrovich). |
| 60. In Lord's deposition testimony, she confirms that as of the date of that email, it was StudentsFirst's intent to vacate the Premises prior to expiration of the Lease. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, p. 63: 23-25; 64:1-3. |
| 61. The requested meeting (the "Meeting") occurred on April 29, 2016 in Plaintiff's office and lasted about 40-45 minutes. | P. Decl., ¶13, Declaration of Lisa Montagnino in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("M. Decl."), ¶4. |
| 62. The meeting was attended by Kellen Arno of StudentsFirst, Deana Lord, Chief Financial Officer of StudentsFirst, Paul Petrovich, owner of Hale Bros. Investment Company, Kenneth King, senior in-house counsel for Plaintiff, and Lisa Montagnino, Vice President of Property Management for Plaintiff. | P. Decl., ¶13; M. Decl., ¶4; Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, p. 83: 11-17 |
| 63. At the Meeting, Plaintiff was informed by Arno and Lord that StudentsFirst had a severe shortage of funds and could not continue to | P. Decl., ¶14; M. Decl., ¶5; Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, pp. 26: 4-7; 85: 20-22. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| make its rent obligations under the Lease beyond June 2016. | |
| 64. Plaintiff was also informed by Arno and Lord that StudentsFirst was in the process of winding up its affairs and merging its operations with a third party. | P. Decl., ¶14; M. Decl., ¶5 |
| 65. Plaintiff was further informed that StudentsFirst's would be abandoning the Premises, and that it expected to dissolve by September 2016 (well before the end of the lease term). | P. Decl., ¶14; M. Decl., ¶5; Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, pp. 66: 13-15 and 20; 67: 3-5. |
| 66. In fact, it was StudentsFirst's intent to dissolve their corporation at least as early as two to three weeks prior to the March 29, 2016 Press Release. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, p. 21: 22-25; 22: 1-2 (Lord became aware that StudentsFirst was dissolving its corporation approximately two to three weeks prior to the Press Release). |
| 67. Indeed, by the time of the Press Release, StudentsFirst had already started the process to dissolve. | Wright Decl., ¶6, Ex. No. 3 – Excerpts of Lord Depo, p. 46: 19-22; 47: 1 |
| 68. Plaintiff was also informed by Arno and Lord during the Meeting that StudentsFirst was actively disposing of its physical and liquid assets in a conscious effort to leave Plaintiff "holding the bag" with no recourse to collect what it was owed under the Lease from StudentsFirst. This, Plaintiff was informed, included paying StudentsFirsts' employees and directors exorbitant severances and transferring to a third party all its remaining assets. This is further supported by Arno deposition testimony in which he testified that one of the biggest cost factors for StudentsFirst was the transition and severance agreement for a large chunk of its staff. Arno further testified that he assumed this is the $1.5 million wind-down cost identified in an email from StudentsFirst's Jim Blew to 50CAN's Marc Porter Magee and Vallay Varro on March 18, 2016. | P. Decl., ¶15; Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, p. 49: 20-25 |
| 69. At the Meeting, Plaintiff was also informed by Arno and Lord that StudentsFirst knowingly waited until the Letter of Credit reduced[2] from $1 million to $500,000.00 to | P. Decl., ¶17. |

_____

[2] The Letter of Credit reduced from $1 million to $500,000 on or about March 21, 2016, well after the StudentsFirst board enthusiastically approved exploring a merger with 50CAN, and well after StudentsFirst already intended to

16

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

| | |
|---|---|
| inform Plaintiff of its plans to vacate the Premises and cease paying rent prior to the expiration of the Lease term, to thwart Plaintiff's ability to draw on the full $1 million. | |
| 70. As of the time of the Meeting, Plaintiff had had a good working relationship with Arno and Lord, who informed Plaintiff that they thought it deserved to know what was going on with StudentsFirst's restructuring and intentions with regard to the Lease. | P. Decl., ¶18. |
| 71. Arno and Lord specifically stared in the Meeting they were disgusted with StudentsFirst's deceitful actions and wanted to distance themselves from those actions and preserve their professional reputations within the Sacramento area. | P. Decl., ¶18. |
| 72. Arno even discussed with Plaintiff open positions with Plaintiff's company, as he, like nearly every other StudentsFirst employee, was being laid off shortly thereafter. | P. Decl., ¶18. |
| 73. On or before June 30, 2016, StudentsFirst vacated the Premises, just as they indicated they intended to do in the April 29, 2016 Meeting. | P. Decl., ¶19; M. Decl. ¶7. |
| 74. Also, as they indicated they would, StudentsFirst ceased making all payment under the Lease after June 2016. | P. Decl., ¶19; M. Decl. ¶7. |
| 75. This default left Plaintiff with insufficient funds in the Letter of Credit and Security Deposit to cover the losses that occurred which include, but are not limited to, future rent obligations, unamortized leasing commissions and tenant improvements, the abated rent, and other costs of Plaintiff. | P. Decl., ¶19. |
| 76. Moreover, 50CAN was aware of the StudentsFirst's lease for the Premises. 50CAN's Marc Magee and Vallay Varro were forwarded an April 15, 2016 email from Jim Blew to the StudentsFirst board of directors with an attached meeting agenda which expressly makes reference to closure of the Sacramento office as of July 1, 2016, and | Wright Decl., ¶7, Ex. 4 - Defendants' Production of Documents, Bate Stamp # PC000000411-412 and PC0000455-472 (Email from Jim Blew to StudentsFirst board with copies to Marc Porter Magee and Vallay Varro dated April 15, 2016, and attached board meeting agenda (redacted)) |

dissolve its companies. (Ex. 10; Lord Depo, p. 21: 22-25; 22: 1-2 (Lord became aware that StudentsFirst was dissolving its corporation approximately 2 to 3 weeks prior to the Press Release).

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

| | |
|---|---|
| identifies the Lease as a main item for discussion at the board meeting. | |
| 77. 50CAN's Marc Porter Magee and Vallay Varro were emailed a documents concerning StudentsFirst wind down costs on March 18, 2016. The document identifies the Sacramento lease as the main item, other than staff and consulting costs, that needs to be covered in their wind down considerations. | Wright Decl., ¶7, Ex. 4 - Defendants' Production of Documents, Bate Stamp # PC000000411-412 and PC0000455-472 (Email from Jim Blew to StudentsFirst board with copies to Marc Porter Magee and Vallay Varro dated April 15, 2016, and attached board meeting agenda (redacted)) |
| 78. Arno testified that Marc Magee and Vallay Varro were in attendance at the meeting referenced in the March 18, 2016 email. | Wright Decl., ¶5, Ex. No. 2 – Excerpts of Arno Depo, p. 47: 18-22 |
| 79. Defendants have provided multiple versions of an asset transfer agreement, and several more versions of the asset list attached thereto. | Wright Decl., ¶13; Defendants' document production in response to Plaitniff's Request for Production of Documents. |
| 80. Plaintiff's out of pocket costs for modifications was $2,788.00. This amount does not reflect the out of pocket costs for installation of the carpet tile as Responding Party has not yet received the invoice for the installation services. Further, discovery is ongoing and Plaintiff has reserved the right to amend and/or supplement its response. | Plaintiff's Response to StudentsFirst Institute's Special Interrogatories, Set One – Exhibit D to the Declaration of Patrick S. Thompson In Support of Defendant's Motion for Summary Judgment (Resp. No. 11). |
| 81. Christopher Tessone did not begin working for 50CAN until April 11, 2016. | Wright Decl., ¶4, Ex. No. 1 – Excerpts of Tessone Depo, p. 52: 8 |
| 82. Tessone has testified that he is **not** the person most knowledgeable concerning: (1) the facts and circumstances surrounding 50CAN's merger with StudentsFirst; or (2) the facts and circumstances surrounding the timing of 50CAN's merger with StudentsFirst. | Wright Decl., ¶4, Ex. No. 1 – Excerpts of Tessone Depo, p. 165: 17-24; Wright Decl., ¶12, Ex. 8 -Plaintiff's Notice of Deposition of Person Most Knowledgeable for 50CAN, Inc. |
| 83. At the Meeting, Arno and Lord provided a financial spreadsheet (which included StudentsFirst's quarterly cash projections – ending June 30th, consolidated activities, and consolidated financial positions) which disclosed StudentsFirst transfer of $1.2 million in contributions being transferred to 50CAN, Inc. ("50CAN") (rather than fulfill their contractual obligations under the Lease with enormous unpaid obligations). | P. Decl., ¶16; Exhibit D thereto; M. Decl., ¶5; Exhibit A thereto. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Dated:  January 16, 2018

SMITH, McDOWELL & POWELL,
A LAW CORPORATION


/s/ C. Jason Smith
C. Jason Smith
Brandon T. Wright
Attorneys for Plaintiff,
Hale Bros. Investment Company, LLC

19

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**