UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALE BROS. INVESTMENT COMPANY, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>STUDENTSFIRST INSTITUTE, a District of Columbia non-profit corporation; STUDENTSFIRST, a District of Columbia non-profit corporation; 50CAN, Inc., a Connecticut corporation, and DOES 1 through 50 inclusive,<br><br>Defendants. | No. 2:16-cv-02284-JAM-EFB<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Hale Bros. Investment Company ("Plaintiff") sued StudentsFirst Institute, StudentsFirst (together, "Students First"), and 50CAN, Inc., (collectively, "Defendants") for claims stemming from StudentsFirst's alleged breach of a commercial lease for office space in downtown Sacramento. Defendants seek Summary Judgment on the two claims remaining against them: breach

1

of contract and fraudulent transfer. A hearing on Defendants' motion was held on January 30, 2018 and the Court took the motion under submission. For the reasons explained below, Defendants' motion is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

StudentsFirst and Plaintiff entered into a commercial lease (the "Lease") for office space in downtown Sacramento—for a term of 67 months (5 years, 7 months), ending in October 2017—on October 26, 2011. Plaintiff's Response to Statement of Undisputed Facts ("RSUF"), ECF No. 38-1, ¶ 1. The parties entered into a related agreement to lease 12 parking spaces for the same term. RSUF ¶ 2. StudentsFirst paid Plaintiff a $41,368.86 security deposit and obtained a Letter of Credit in the initial amount of $1,000,000. RSUF ¶¶ 3, 4. StudentsFirst took possession of the premises on or about March 6, 2012, and began making rental payments on October 6, 2012. RSUF ¶¶ 5, 6. The Letter of Credit reduced to $500,000 on March 21, 2016, per the lease. RSUF ¶ 9. The parties dispute whether that reduction was proper under the terms of the Lease, in light of StudentsFirst's plans to dissolve and break the Lease early.

According to Plaintiff, Kellen Arno, StudentsFirst's Vice President of Strategy and Communications first informed Plaintiff of StudentsFirst's intention to vacate the building prior to termination of the Lease in an email dated April 25, 2016. Plaintiff's Disputed Material Facts ("PDMF") ¶¶ 58, 59. On April 29, 2016, Kellen Arno, Deana Lord, StudentsFirst's Vice President of Finance, Paul Petrovich, owner of Hale Bros. Investment

Company, Kenneth King, senior in-house counsel for Plaintiff, and Lisa Montagnino, Vice President of Property Management for Plaintiff, met to discuss the Lease and StudentsFirst's "merger" with a third party ("April 29th meeting"). PDMF ¶¶ 61-65, 69, 71, 72.

StudentsFirst made its monthly rental payments through June 2016 and vacated the premises by July 1, 2016. RSUF ¶¶ 7, 10. Plaintiff retained StudentsFirst's security deposit and drew on the $500,000 Letter of Credit. RSUF ¶¶ 20, 21.

Plaintiff entered into a lease with a new tenant on or about September 6, 2016. RSUF ¶ 16. The new tenant received rent abatements for the first five months of the lease and was expected to pay rent of $216,000 through October 31, 2017, and parking rent of $14,400 through that date. RSUF ¶¶ 18, 19.

The parties' dispute, for the purposes of this motion, revolves around whether StudentsFirst breached the Lease prior to the Letter of Credit reduction, whether the Lease terms setting forth certain damages in the event of a breach are enforceable, and whether StudentsFirst transferred assets to 50CAN with the intent to prevent Plaintiff from reaching them to satisfy its claims.

Plaintiff filed this lawsuit in state court and Defendants removed it to federal court on September 26, 2016. ECF No. 1. Plaintiff filed its First Amended Complaint the following month, which Defendants then moved to dismiss. ECF Nos. 8, 9, & 10. This Court subsequently dismissed Plaintiff's claims for fraud, civil conspiracy, common counts, declaratory relief, and relief under the UCL. ECF No. 23. The only remaining claims in

Plaintiff's suit are for breach of contract and fraudulent transfer.

Defendants filed an answer in which StudentsFirst asserted counterclaims against Plaintiff for breach of contract and conversion, primarily based on Plaintiff drawing upon the Letter of Credit. ECF No. 24. StudentsFirst's counterclaims are not at issue in this motion.

## II. OPINION

### A. Breach of Contract

To prevail on its breach of contract claim, Plaintiff "must prove (1) the existence of a contract, (2) [Plaintiff's] performance of its obligations under the contract or excuse for nonperformance, (3) [Defendants'] breach, and (4) resulting damage to [Plaintiff]." Arch Ins. Co. v. Sierra Equip. Rental, Inc., No. 2:12-cv-00617-KJM-KJN, 2016 WL 4000932, at *3 (E.D. Cal. July 25, 2016). "A breach of contract is not actionable without damage." Bramalea Cal., Inc. v. Reliable Interiors, Inc., 119 Cal. App. 4th 468, 473 (2004).

Defendants do not concede that they breached the Lease, but argue that even if they breached the Lease, Plaintiff has not suffered a compensable loss that would support its claims. They contend Plaintiff cannot prove damages in excess of the security deposit and Letter of Credit that Plaintiff has already drawn upon. Mot. at 8-10. They argue that the clauses in the Lease providing for damages related to the tenant improvement allowance, leasing commissions, and previously abated rent are punitive in nature and thus unenforceable under California law.

4

Id. at 11.

Plaintiff argues that the damages in question "do not amount to unenforceable late fees or liquidated damages because they do constitute actual harm suffered and are not designed merely to penalize." Opp. at 13. Alternatively, Plaintiff argues, the Court could treat these lease provisions as liquidated damages clauses. As such, they would be enforceable because the provisions are reasonably related to the range of actual damages that the parties could have anticipated would flow from a breach. Id. at 16. (citing Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal.4th 970, 977 (1998)).

    1. Damages Recoverable

Generally, "[a]n injured party may recover for a breach of contract the amount which will compensate it 'for all the detriment proximately caused [by the breach], or which, in the ordinary course of things, would be likely to result [from the breach].'" Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226 Cal. App. 3d 442, 468 (1990) (quoting Cal. Civ. Code section 3300). "Damages awarded to an injured party for breach of contract seek to approximate the agreed-upon performance." Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist., 34 Cal. 4th 960, 967 (2004) (citation and quotation marks omitted). "The damages awarded should, insofar as possible, place the injured party in the same position it would have held had the contract properly been performed, but such damage may not exceed the benefit which it would have received had the promisor performed." Brandon & Tibbs, 226 Cal. App. 3d at 468 (citing Cal. Civ. Code section 3358). "This limitation of damages for

breach of a contract serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise." Lewis Jorge Const. Mgmt., 34 Cal. 4th at 968. California Civil Code section 1951.2 codifies this standard as to leases.

Defendants contend that under these principles, Plaintiff's damages consist of base rent and parking rent for the remainder of the lease—less mitigation—plus costs associated with mitigation efforts. Mot. at 9-10. The money Plaintiff retained from the security deposit and Letter of Credit put Plaintiff in the same position it would have been in had StudentsFirst fulfilled the lease as agreed. Thus, Plaintiff has no loss of which to complain.

Plaintiff fails to advance a convincing counterargument. While Plaintiff distinguishes this case from cases in which a court found that contractual damages constituted unrecoverable "penalties," Plaintiff has not cited a case in which a court awarded damages beyond those that would approximate full performance under the contract (that is, in absence of a liquidated damages clause). Pursuant to the Lease, Plaintiff would not have been compensated for tenant improvements, leasing commissions, or the abated rent had StudentsFirst performed under the contract. Under the principles cited above, Plaintiff cannot recover both damages approximating full performance and reliance damages.

The Court further rejects Plaintiff's contention that StudentsFirst would have owed Plaintiff $554,457.60 for the tenant improvements at the end of the five year Lease. Opp. at

14. No such term or balloon payment is articulated in the Lease. Per the lease, the Tenant Improvement Allowance was amortized over a 10 year period. Article 11.6(c) of the Lease provides that Plaintiff may, upon any draw permitted under the Lease, draw upon the Letter of Credit to reimburse itself for the amortized costs of the Tenant Improvement Allowance and leasing commissions. It then states that "[p]rovided Tenant has performed all of its obligations under the Lease, [Plaintiff] agrees to pay to [StudentsFirst] by the Final LC [(Letter of Credit)] Expiration Date the amount of any proceeds of the Letter of Credit received by [Plaintiff] and not applied as allowed above[.]" There is no provision requiring Plaintiff to then pay the remaining balance of the amortized Tenant Improvement Allowance or indicating that Plaintiff could draw upon the remaining credit to satisfy such an obligation.

Under the contract principles cited in this section, Plaintiff has already been compensated for any breach. The base rent owed, parking rent owed, and mitigation amount are all undisputed. See generally RSUF. Plaintiff does contend it spent more money to relet the premises. RSUF ¶ 24 ("As of October 18, 2017, Plaintiff's out of pocket costs for modifications was $2,788.00. This amount does not reflect the out of pocket costs for installation of the carpet tile as Responding Party has not yet received the invoice for the installation services. Further, discovery is ongoing and Plaintiff has reserved the right to amend and/or supplement its response."). But, Plaintiff has not argued or suggested that this expense will exceed the approximately $70,000 it retained in excess of the amount owed on

7

the contract.

Defendants' argument that application of the above described general contract damages principles must lead to the conclusion that Plaintiff has already received an amount sufficient to approximate full performance under the lease and therefore summary judgment should be granted in their favor would appear to be meritorious. However, the analysis does not end here.

### 2. Liquidated Damages

As explained below, Defendants are not entitled to summary judgment because Defendants failed to meet their burden of showing that the damages provisions in the Lease are not valid liquidated damages provisions.

"The objective of a liquidated damages clause is to 'stipulate [ ] a pre-estimate of damages in order that the [contracting] parties may know with reasonable certainty the extent of liability' in the event of breach." El Centro Mall LLC v. Payless ShoeSource, Inc., 174 Cal. App. 4th 58, 63 (2009) (quoting ABI, Inc. v. City of L.A., 153 Cal. App. 3d 669, 685 (1984)). In a commercial lease, "a provision . . . liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code section 1671; Harbor Island Holdings v. Kim, 107 Cal. App. 4th 790, 795 (2003) (applying section 1671 to an action for breach of a commercial lease). "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual

1  damages that the parties could have anticipated would flow from a
2  breach." Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal. 4th 970,
3  977 (1998). The amount set "must represent the result of a
4  reasonable endeavor by the parties to estimate a fair average
5  compensation for any loss that may be sustained." Id. (quoting
6  Garrett v. Coast & Southern Fed. Sav. & Loan Assn., 9 Cal.3d 731,
7  739 (1973)).

If there is no such reasonable relationship, then a contractual clause that predetermines damages will be construed as a penalty. Id.

> A penalty provision operates to compel performance of an act and usually becomes effective only in the event of default upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract.

Id. (quoting Garrett, 9 Cal.3d at 739) (quotation marks omitted). So, the reasonableness of the clause at the time the contract was signed will determine whether it is a permissible, liquidated damages clause or an unenforceable penalty.

Liquidated damages clauses are presumptively valid. Weber, Lipshie, & Co. v. Christian, 52 Cal. App. 4th 645, 654 (1997). "[T]he burden of proving the clause is unreasonable at the time the contract was made is placed on the Defendants." Radisson Hotels Intern., Inc. v. Majestic Towers, Inc., 488 F. Supp. 2d 953, 959 (C.D. Cal. 2007) (citing Weber, Lipshie & Co., 52 Cal. App. 4th at 654).

Defendants failed to meet their burden. In fact, Defendants chose not to engage with this argument at all. In Footnote 2 of

their Reply brief, Defendants wrote: "Plaintiff relies on cases enforcing liquidated damages clauses, but the reasoning in those cases is inapposite because the Lease does not contain such a provision and the extent of any actual loss is ascertainable." Rep. at 2. Counsel relied on this reasoning at the hearing, arguing that because the loss amounts were ascertainable, the provisions in the contract did not qualify as liquidated damages clauses. Additionally, none of the provisions are labeled "liquidated damages."

But the provisions in question here are liquidated damages provisions. California courts have defined liquidated damages as "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement." Chodos v. West Publishing Co., 292 F.3d 992, 1002 (9th Cir. 2002) (quoting Kelly v. McDonald, 98 Cal. App. 121, 125 (1929)). Courts look to the substance of the damages provision rather than the form. See Applied Elastomerics, Inc. v. Z-Man Fishing Prod., Inc., 521 F. Supp. 2d 1031, 1045 (N.D. Cal. 2007) ("Where the contract uses the term 'penalty' or 'liquidated damages,' however, is not determinative. As explained in Weber, 'A court will interpret a liquidated damages clause according to its substance, and if it is otherwise valid, will uphold it even if the parties have referred to it as a penalty.'") (quoting Weber, Lipshie, & Co., 52 Cal. App. 4th at 656). Even the cases Defendants rely upon analyzed the damages provisions under the liquidated damages rubric. See, e.g., Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal. 4th 970, 977 (1998) (analyzing a prepayment charge under the liquidated damages statute and finding it

10

unenforceable); Harbor Island Holdings v. Kim, 107 Cal. App. 4th 790, 795 (2003) (determining the validity of a deferred rent provision under Civil Code section 1671). Unlike the more obvious penalties Defendants cite, see, e.g., Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc., 521 F. Supp. 2d 1031 (N.D. Cal. Sep. 25, 2007) (finding a treble damages provision to be an unenforceable penalty because it could not have been the result of a reasonable endeavor to estimate fair compensation for any loss sustained), the damages provisions at issue in this case are tied to expenses Plaintiff incurred.

Furthermore, the fact that Plaintiff's losses may have been ascertainable is not dispositive. Before 1977, liquidated damages clauses were only enforceable if determining actual damages was impracticable or extremely difficult. Ridgley, 17 Cal. 4th at 977. But the 1977 amendment liberalized the rule as to certain contracts—including commercial leases—shifting the presumption to one of validity and dropping the previous restriction. Id.

Defendants have not shown that these provisions are unenforceable as a matter of law and have failed to present facts concerning the reasonableness of the provisions at the time the parties entered the contract. Defendants even suggest some of the provisions may have been reasonable at some point in time. Mot. at 12 ("One can imagine circumstances in which a landlord might be entitled to recover one or more of these types of remedies if it were at an early stage of the lease[.]"). The Court denies Defendants' motion for summary judgment on this

cause of action on the record before it.[1]

   B.   Fraudulent Conveyance

"A fraudulent conveyance under the [Uniform Fraudulent Transfer Act] involves a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." Filip v. Bucurenciu, 129 Cal. App. 4th 825, 829 (2005) (quoting Kirkeby v. Super. Ct., 33 Cal.4th 642, 648 (2004) (internal quotation marks omitted)). Under California Civil Code section 3439.04(a)(1), "a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor."  "Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer." Filip, 129 Cal App. 4th at 834.

Defendants argue, first, that Plaintiff's fraudulent transfer claim cannot move forward because Plaintiff has not suffered a loss and therefore has not been injured.  However, because Plaintiff's injury remains in dispute, the Court denies summary judgment on this basis.

Defendants also contend that Plaintiff cannot show Defendants harbored an "intent to defraud" as required to support the claim.  Because "StudentsFirst decided to transfer certain of

---

[1] The Court offers no opinion on the ultimate validity of the provisions in question.

12

its programs to 50CAN in order to protect the continued viability of those programs," "the transfer occurred for a lawful and appropriate purpose" and Plaintiff "cannot satisfy its burden of proving any deceitful intent." Mot. at 13.

As the Court indicated at the January 30 hearing, there are material disputed facts that preclude summary judgment on this claim. First, Defendants have failed to marshal adequate support for their defense. They rely on the Declaration of Christopher A. Tessone, a 50CAN employee. ECF No. 30-3. But a proper foundantion has not been laid for Mr. Tessone's testimony regarding StudentsFirst's intent in transferring assets to 50CAN. Mr. Tessone did not work for StudentsFirst and he did not start working for 50CAN until the asset transfers had already been planned. <u>See</u> PDMF ¶¶ 30, 33, 81, 82. Additionally, there is circumstantial evidence in the record that supports an inference that StudentsFirst intended to transfer assets to protect those assets from their obligations to Plaintiff and others.

Summary judgment on this second claim is denied as well.

### III. ORDER

For the reasons set forth above, the Court DENIES Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: February 7, 2018

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE